## JONES *vs.* ADAMS and others.

1. The evidence in this case held not sufficient to show fraud and avoid certain assignments charged to be without consideration, and fraudulent and void as against the complainant.

2. But one of the mortgages assigned being for a greater amount than was given for it by the assignee, and the circumstances being suspicious as to the fairness of the transaction, the assignee was decreed to assign it to the complainant on his paying the amount of the securities given in exchange for it.

The cause was heard upon the pleadings and proofs, before the Vice-Chancellor.

*Mr. Coult*, for complainant.

*Mr. Hamilton*, for defendant.

THE VICE-CHANCELLOR.

The complainant is a judgment creditor of the defendant, John B. Adams, holding against him two judgments, amounting together to about $1000, and has filed this bill to have the judgments satisfied out of two certain mortgages made to Adams, and now held by his assigns. The leading facts are these: Adams purchased, in 1866, a hotel property in Branchville, in the county of Sussex, and kept an inn there till January, 1870, when he sold and conveyed the premises and furniture for the sum of $7500, being then indebted to complainant. Part of this price was settled by promissory notes, part by the assuming of encumbrances on the property, and

the balance by a farm conveyed to Adams' wife, which farm was valued at $5000, and encumbered for $2000. In March, 1870, Adams and wife conveyed the farm to Daniel H. Rutan for $5500, and for the whole of said price, after deducting said encumbrance, took a mortgage to Mrs. Adams for $3500, embracing the premises conveyed, together with other lands owned by Rutan. On the 1st of April, 1870, Mrs. Adams assigned the mortgage to her daughter, Mary Adams, then about twenty-one years of age, who afterwards assigned it to her aunt, Miranda Wood. In the same month of March, John B. Adams assigned to this daughter another mortgage for the sum of $763, made to him a few months before. On the 15th of April following, the latter mortgage was assigned by the daughter to her mother. For the debts of Adams, at the time of these assignments, suits were soon after brought and the judgments recovered, which the complainant now seeks to enforce. The executions issued on them were returned unsatisfied, and Adams being examined under the statute, declared himself without means or property to pay.

These assignments the complainant charges were made without consideration, or to defeat, delay, or hinder creditors, and as against him are fraudulent and void. Two answers are filed—one by Adams and wife, the other by Miranda Wood. They allege that Mrs. Adams was possessed in her own right of a separate estate, which was used by her husband in the purchase of the hotel; that although the title was taken by him, the property was equitably hers, and on the sale of it, the resulting mortgage of $3500 was executed to her in consideration of the moneys she had advanced; that Mary C. Adams, the daughter, had also property of her own, being moneys given by her brother in his lifetime and at his death, which moneys she had loaned to her father and were in his hands when the hotel was sold; that she had also, for four or five years, worked for him in his business at the wages of $2 per week; that the whole indebtedness so incurred amounted to about $1500, in part payment of which she took the mortgage of $763; that wishing to realize, in cash, the whole of

her claim, she arranged with her mother to take from her the mortgage of $3500 and give back the mortgage of $763, held by herself, intending to sell the larger mortgage, and after satisfying her own claim to give her mother the excess; that she disposed of it to her aunt for $1000 less than its face, taking for it from her aunt another mortgage of $1500 and a note for $1000, to her mother, which note the aunt afterwards paid.

The circumstances and details of these general facts were thoroughly investigated at the hearing, the parties themselves, besides others, being witnesses. Upon carefully weighing the evidence, my conclusion is that neither of these mortgages can be held fraudulent and void, either as being without consideration, or as made or assigned to hinder and defeat creditors. Claims like those of the daughter and wife in this case, are well open to suspicion, but the evidence is too positive and clear to permit me to doubt that the daughter and mother did have moneys of their own not derived from the father, which they lent him and were equitably entitled to have repaid. In the case of the daughter, the sums of $400 and $600 are proved to have been given her by her brother, who died at the close of the war, being moneys received by him for bounties and pay. These moneys were lent to the father, and in part payment the mortgage of $763 was assigned to her. This mortgage should not be disturbed. In regard to the other, there is more room to doubt. It is sufficiently proved that Mrs. Adams had separate means; that she obtained them from her father and brothers; that before the purchase of the hotel her means had been invested in her own name in lands and securities which were subsequently changed into money, and taken by her husband and agreed to be refunded or secured to her separate use. There is no ground to question that her claim, under the circumstances, was just, but there is much ground to question the amount of it, and to question also the insistment that the object of the assignment to her was simply to secure to her the actual sum due. There is uncertainty and vagueness as to what this

sum really was. It was certainly less than $3500, the amount of the mortgage, and I am satisfied was not more than $2500, the amount for which it was afterwards assigned to her sister, Mrs. Wood. It was made for the whole price of the farm, after deducting the encumbrance, and was payable in six years, and for these reasons is earnestly insisted to have been worth less than its face. These reasons are relied on to explain and to justify the large discount allowed on it when assigned to Mrs. Wood, and to show that its fair value did not exceed what was really due Mrs. Adams. But this insistment is refuted by the fact that other lands were included in it and worth enough to make the mortgage secure. The circumstances attending its execution and transfer excite suspicion and distrust. They savor much of a purpose in Adams to keep his property from the reach of his creditors, as well as to secure to his wife her separate estate. The evidence justifies the belief that upon the sale of the farm there was property enough, out of which both she and the creditors might have been paid or secured. But whether this be so or not, there was nothing to justify the assignment of the mortgage to her in excess of her claim. The general aspect of the transaction is unfavorable and dubious. But I do not feel warranted in pronouncing it on her part a fraud, and directing the mortgage, on that ground, to be entirely given up. In her hands and in the hands of Mrs. Wood, the price or consideration of it is inadequate indeed, but, *pro tanto*, it seems to me good. Consistently with the evidence in the cause, and with the equities of parties, it may be treated as a security to Mrs. Adams, but not as her absolute property. The $2500 paid for it by Mrs. Wood is probably nearly equal to, certainly not less, than what is shown by the proofs to have been due to Mrs. Adams. The assignment to Mrs. Wood was undoubtedly procured at the suggestion and by the management of Adams himself; and whatever her information or intentions may have been, all the circumstances compel the belief that his object was the more effectually to protect the mortgage from liability for his debts. The trans-

fer was made on the 10th of August. One of the judgments was obtained on the 31st of that month, and the other on the 8th of September. Both suits were pending when the transfer was made. The reasons given for assigning it are specious, and are contradicted by subsequent acts. The daughter says it was done to enable her to raise money to go into business. But she took a mortgage for it of $1500 to herself, and a note for $1000 to her mother. The mortgage was not turned into money and is held by her yet. That Mrs. Wood was not fully apprised of the object in inducing her to go into the transaction, is probably true. She is entitled, on this ground, to be secured for her advances, but no more. She did as she was asked, did not look at the property and gave what was named to her, following, evidently, their lead. I am entirely satisfied, from the evidence as given at the hearing, that this is the true view of her case.

The conclusion I have reached is, that the complainant is entitled to what remains of this mortgage after paying Mrs. Wood. She must be decreed to assign it to him on payment of the principal and interest of the mortgage, and the note which she gave in exchange for it. A reference should be made to ascertain this amount. The judgments of the complainant will somewhat exceed the surplus or balance of the mortgage after paying Mrs. Wood; but such balance, when collateral, is to be credited on his claim. This result is in accordance with the settled methods and principles of equity, and with the action of this court in similar cases. *Beeckman* v. *Montgomery*, 1 *McCarter* 106 ; *Demarest* v. *Terhune*, 3 *C. E. Green* 532; *Tantum* v. *Green*, 6 *C. E. Green* 364.

In *Boyd* v. *Dunlap*, 1 *Johns. Ch.* 478, it was said by Chancellor Kent, that where a deed is sought to be set aside as voluntary and fraudulent against creditors, and there is not sufficient evidence of fraud to induce the court to avoid it absolutely, but there are suspicious circumstances as to the adequacy of the consideration and fairness of the transaction, the court will not set aside the conveyance altogether, but permit it to stand as security for the sum actually paid.

In the present case, I think a discrimination should be made as to costs, and will advise that the decree made in pursuance of the above be with costs against Adams, but without costs as to the defendant, Mrs. Wood.